**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF FREDERICK J. WARREN FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

I.     FACTUAL BACKGROUND ......................................................................................... 5

    A.    The Parties.......................................................................................................... 5

    B.    The NAFTA Arbitration .................................................................................... 5

    C.    The Lack of Required Disclosures by Prof. Jana and Mr. Bottini in the
         NAFTA Arbitration............................................................................................ 7

    D.    The Foreign Proceedings .................................................................................. 12

    E.    Respondent Possesses Highly Material Information For Use In Foreign
         Proceedings ...................................................................................................... 14

II.    ARGUMENT............................................................................................................. 15

    A.    Legal Framework .............................................................................................. 15

    B.    Petitioner Satisfies The Statutory Requirements of 28 U.S.C. § 1782. ............... 16

         1.    Respondent Is "Found" in The District of Columbia.............................. 17

         2.    The Discovery Sought Is for Use in Foreign Proceedings. ..................... 17

         3.    Petitioner Is an "Interested Person"........................................................ 19

    C.    All of the Discretionary Factors of Section 1782 Weigh in Favor of
         Permitting the Discovery Petitioner Seeks.......................................................... 19

         1.    The First Intel Factor Favors Granting Discovery................................... 20

         2.    The Second Intel Factor Favors Granting Discovery.............................. 20

         3.    The Third Intel Factor Favors Granting Discovery................................. 22

         4.    The Fourth Intel Factor Favors Granting Discovery............................... 24

III.   CONCLUSION......................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

### Cases

*In re Adams*,
   No. 21-MC-80011-VKD, 2021 WL 275478 (N.D. Cal. Jan. 27, 2021) ............................... 17

*Al Fayed v. C.I.A.*,
   229 F.3d 272 (D.C. Cir. 2000) ...................................................................................... 16

*Alexander v. FBI*,
   194 F.R.D. 316 (D.D.C. 2000) ....................................................................................... 24

*In re Application for an Order Permitting Metallgesellschaft AG to Take
   Discovery*,
   121 F.3d 77 (2d Cir. 1997) ............................................................................................ 23

*In re Application of Euromepa S.A.*,
   51 F.3d 1095 (2d Cir.1995) .......................................................................................16, 22

*In re Barnwell Enters. Ltd.*,
   265 F. Supp. 3d 1 (D.D.C. 2017) .................................................................................18, 21

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ............................................................................................. 16

*In re Caratube Int'l Oil Co.*,
   730 F. Supp. 2d 101 (D.D.C. 2010) ................................................................................. 21

*In re Chevron Corp.*,
   No. 7:10-mc-00067, 2010 WL 4883111 (W.D. Va. Nov. 24, 2010) ..............................22, 23

*In re DiGiulian*,
   314 F. Supp. 3d 1 (D.D.C. 2018) ....................................................15, 18, 19, 20, 21, 23

*In re Gianoli Aldunate*,
   3 F.3d 54 (2d Cir. 1993) ................................................................................................ 17

*Infineon Techs. AG v. Green Power Techs. Ltd.*,
   247 F.R.D. 1 (D.D.C. 2005) ........................................................................................... 24

*Intel Corp. v Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) .................................................................. 4, 15, 16, 18, 19, 20, 22, 24

*In re Kuwait Port Authority*,
   No. 22-00064-RJL-RMM, 2024 WL 4183210 (Aug. 6, 2024) .................................19, 20, 24

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
   Civ. No. 1:08-CV-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .............................. 23

*In re Pishevar*,
   No. 21-MC-105, 2023 WL 2072454 (D.D.C. Feb. 17, 2023) .............................................. 15

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co.*
*LLP Pursuant to 28 U.S.C. sec. 1782*,
   110 F. Supp. 3d 512 (S.D.N.Y. 2015) ............................................................................... 17

*In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech*,
   748 F. Supp. 2d 522 (E.D. Va. 2010) ................................................................................ 18

*In re Shefsky*,
   2023 WL 9065152 (D.Nev. Nov. 1, 2023) .................................................................17, 21

*In re Veiga*,
   746 F. Supp. 2d 8 (D.D.C. 2010) ........................................................... 16, 18, 21, 23, 24

*In re West Face Capital Inc.*,
   No. 19-MC-80260-LB, 2019 WL 5617891 (N.D.Cal. Oct. 31, 2019)...........................17, 21

**<u>Statutes</u>**

28 U.S.C. § 1782 ........................................................1, 4, 14, 15, 16, 17, 19, 21, 22, 23, 24, 25

Petitioner Frederick J. Warren ("Petitioner") respectfully submits this Memorandum of Law in support of his Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing him to obtain discovery from White & Case LLP ("White & Case" or "Respondent"),[1] in the form of the attached subpoena *duces tecum* (the "Subpoena") (the "Application").[2]

## PRELIMINARY STATEMENT

This Application is brought by Petitioner for the purpose of obtaining necessary discovery in aid of foreign civil proceedings captioned *Alicia Grace et al., v. United Mexican States*, Court File Number CV-24-00727935-00CL, currently underway in the Ontario Superior Court of Justice (the "Ontario Court") (the "Foreign Proceedings") in Ontario, Canada. Petitioner, along with 26 other U.S. individuals and entities (together with Petitioner, the "Applicants" or "Claimants"), commenced the Foreign Proceedings on September 17, 2024, by applying for the Ontario Court to set aside an arbitration award (the "Award") made in favor of non-party United Mexican States ("México") against the Claimants in an arbitration proceeding styled *Alicia Grace and others v. United Mexican States*, ICSID Case No. UNCT/18/4 and conducted pursuant to the North America Free Trade Agreement ("NAFTA") (the "NAFTA Arbitration"). In the underlying NAFTA Arbitration, the Claimants alleged México's breaches of its obligations under the NAFTA and

---

[1]    Although Courts routinely grant Section 1782 applications *ex-parte*, Petitioner is filing this Application with notice. Petitioner will file a certificate of service with the Court upon delivering copies of this Application to White & Case.

[2]    The Subpoena is attached as Exhibit 2 to the Declaration of David M. Orta, dated November 14, 2024 ("Orta Decl.").

international law. The Award rendered by a panel of three arbitrators on August 19, 2024 dismissed all of the Claimants' claims against México on jurisdictional grounds.

In the Foreign Proceedings, Petitioner has alleged that the Award should be set aside for various reasons, including because the Claimants' party-appointed arbitrator, Prof. Andrés Jana Linetzky ("Prof. Jana"), failed disclose potential sources of his bias to the parties to the NAFTA Arbitration, which, in turn, deprived the Claimants, including Petitioner, of the opportunity to seek the recusal of Prof. Jana for lack of his independence and impartiality.[3] Petitioner named Prof. Jana as arbitrator in the NAFTA Arbitration in June 2018 at which time he was a named partner at the Chilean law firm *Bofill Mir & Álvarez Jana* ("Bofill Mir"), where he had been a partner for over 10 years.[4] At that time, based on the publicly available information available then, Prof. Jana did not have a practice of predominantly representing sovereign states in investor-state arbitrations.[5] That changed when Prof. Jana left Bofill Mir in early 2022, founded a boutique law firm based in Santiago, Chile, and began soliciting work from sovereign states to represent them in, *inter alia*, investor-state arbitrations.[6] Specifically, Prof. Jana, along with Mr. Rodrigo Gil, founded the Chilean law firm *Jana & Gil Dispute Resolution* ("Jana & Gil") in early 2022.[7] He and his firm of only 20 lawyers[8] then pursued and accepted several mandates to represent the interests of sovereign states in Latin America in international investment treaty arbitrations similar

---

[3] Orta Decl. ¶ 7; *see also id.*, Ex. 5 ("Notice of Application"), § 2(y)(ii).

[4] Orta Decl. ¶ 12 & Ex. 7.

[5] Orta Decl. ¶ 12.

[6] *Id.*

[7] Orta Decl. ¶ 8 & Ex. 6, 7.

[8] Orta Decl. Ex. 11.

to the NAFTA Arbitration. While this was happening, Prof. Jana was deliberating in the NAFTA Arbitration for the issuance of the Award. However, neither Jana & Gil's campaign since 2022 to represent sovereign states in international investor-state arbitrations, nor Prof. Jana's involvement as counsel to sovereign states in these proceedings was disclosed to the parties to the NAFTA Arbitration.[9] Being the founding partner and head of international arbitration practice of Jana & Gil,[10] Prof. Jana would have likely played a central role in soliciting and securing these engagements from sovereign states.[11] These circumstances could justifiably give rise to concerns about Prof. Jana's independence and impartiality to adjudicate the Claimants' claims against México; and yet, Prof. Jana remained completely silent, never disclosed any of his mandates to represent the interests of sovereign states in investor-state arbitrations, and partook in rendering the Award in favor of México.[12]

Based on publicly available information, White & Case has been involved as claimant-side counsel in two such investor-state treaty arbitrations where Jana & Gil has been serving as counsel of record for sovereign states: (i) *Honduras Próspera Inc., St. John's Bay Development Company LLC, and Próspera Arbitration Center LLC v. Republic of Honduras*, ICSID Case No. ARB/23/2; and (ii) *Webuild S.p.A (formerly Salini Impregilo S.p.A.) v. Republic of Panama*, ICSID Case No. ARB/20/10 (collectively, the "Jana & Gil Cases").[13] In the former case, Jana & Gil represents Honduras; in the latter, it represents the Republic of Panama ("Panama" and together with

---

[9]  Orta Decl. ¶¶ 7, 22.

[10]  *See* Orta Decl. Exs. 6, 7, 8.

[11]  Orta Decl. ¶ 13.

[12]  *See* Orta Decl. ¶¶ 22-23.

[13]  Orta Decl. Exs. 9, 10.

Honduras, the "Sovereigns").[14] Prof. Jana made no disclosure of these engagements to the parties in the NAFTA Arbitration.[15]

Respondent therefore has possession, custody, or control of documents and information to reveal the details of Prof. Jana's role and involvement in these arbitration proceedings, including the duration of his participation in the Jana & Gil Cases as well as any legal positions that Prof. Jana and his law firm have taken and/or will likely take on behalf of the Sovereigns, which issues, on information and belief, may be similar to the issues that Prof. Jana decided against the Claimants when issuing the Award. This information will be important for Petitioner to substantiate and prove his claim in the Foreign Proceedings that Prof. Jana improperly failed to disclose his and his firm's solicitation of the work to represent the Sovereigns, his appearance and involvement as counsel of the Sovereign in the Jana & Gil Cases, as well as certain particulars of those cases, that give rise to justifiable doubts as to his impartiality and/or independence in issuing the Award.[16]

This Application meets all of the requirements of Section 1782. White & Case resides or is found in this district. The discovery sought by Petitioner – the production of certain arbitration records of, and communications related to the Jana & Gil Cases – is relevant to the issues at stake in the Foreign Proceedings. Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel Corp. v Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) decision weighs in favor of permitting the discovery sought by Petitioner. Accordingly, Petitioner respectfully requests that the Court grant his Application and permit him to serve the Subpoena on the Respondent.

---

[14] Orta Decl. Exs. 9, 10.

[15] Orta Decl. ¶ 22.

[16] Orta Decl. ¶ 32; *See also* Declaration of John A. Terry, dated November 14, 2024 ("Terry Decl."), ¶¶ 26, 28, 29.

I.    **FACTUAL BACKGROUND**

    A.    **The Parties**

*Mr. Frederick J. Warren* is a member of the group of 27 U.S. individuals and entities that initiated the Foreign Proceedings in Canada to set aside the Award by filing a Notice of Application on September 17, 2024 before the Ontario Superior Court of Justice.[17]

    **White & Case** is a law firm with an office in Washington, D.C.[18]  White & Case, primarily through its Washington, D.C. office, is representing the investor-claimants in two international investor-state treaty arbitrations, respectively styled *Honduras Próspera Inc., St. John's Bay Development Company LLC, and Próspera Arbitration Center LLC v. Republic of Honduras*, ICSID Case No. ARB/23/2 and *Webuild S.p.A (formerly Salini Impregilo S.p.A.) v. Republic of Panama*, ICSID Case No. ARB/20/10.[19]  In both arbitrations, which are currently underway before ICSID, Jana & Gil has been representing the state-respondents – Honduras in the *Honduras Próspera* case and Panama in the *Webuild* case – as their counsel of record.

    B.    **The NAFTA Arbitration**

    On June 19, 2018, Petitioner, along with 26 other U.S. shareholders of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Oro Negro"), a Mexican oil-service company, initiated the NAFTA Arbitration against México for destroying the value of their investment in Oro Negro in violation of its obligations under the NAFTA and international law.[20]

---

[17]   Notice of Application, § 2(a)(xi).

[18]   Orta Decl. Ex. 3.

[19]   Orta Decl. ¶¶ 13-15 & Exs. 9, 10.

[20]   Award ¶ 6.

In the NAFTA Arbitration, the Claimants appointed Prof. Jana as arbitrator on June 24, 2018,[21] and México appointed Mr. Bottini as arbitrator on September 17, 2018.[22]  The NAFTA Arbitration formally commenced on January 25, 2019 when the Secretary-General of ICSID appointed Prof. Diego P. Fernández Arroyo as presiding arbitrator.[23]

The three arbitrators (collectively, the "Tribunal") held a 7-day hearing in Washington, D.C. from April 24 to April 30, 2022, during which the Tribunal heard the parties' arguments on jurisdiction, merits, and quantum.[24]  The Tribunal then engaged in *inordinately lengthy deliberations that lasted almost two and one-half years*, during which the Tribunal, through ICSID, periodically informed the parties to the NAFTA Arbitration – specifically, on June 27, 2023, December 19, 2023, and April 3, 2024 – that its deliberation and drafting of the Award were still in progress.[25]  But Prof. Jana remained silent throughout this period and made no disclosure of his participation and that of his firm in any of the Jana & Gil Cases.[26]

The Tribunal eventually issued the Award on August 19, 2024.  In the Award, the three arbitrators unanimously ruled that the Tribunal lacked jurisdiction to hear all of the Claimants' claims against México; and that the Claimants should pay México's arbitration costs in the amount of USD 397,619.3.[27]

---

[21]  Award ¶ 7.

[22]  Award ¶ 9.

[23]  Award ¶ 18.

[24]  Orta Decl. ¶ 23; Award ¶ 150.

[25]  Orta Decl. Ex. 17.

[26]  *See* Orta Decl. ¶¶ 22-23.

[27]  Award ¶ 566.

The Tribunal's jurisdictional rulings were based on two specific grounds.  First, it held that it lacked jurisdiction to hear the claims submitted by two of the Claimants, who were nationals of both the United States of America and México, by concluding that dominant and effective nationality test applies under the NAFTA and that each of the two Claimants' dominant and effective nationality was that of México, not the United States of America.[28]  The Tribunal did so, even though the NAFTA does not include or mention the dominant and effective nationality test.[29]  Second, with respect to the claims submitted by the remaining 25 Claimants who were not dual nationals, the Tribunal declared that it lacked jurisdiction to hear their claims submitted on their own behalf under Article 1116(1) of the NAFTA, because Article 1116(1), in the Tribunal's view, did not provide an avenue for these Applicants to seek reflective losses, *i.e.*, losses to the value of their shares in Oro Negro due to harm suffered by Oro Negro.[30]  In so doing, the Tribunal again read into the NAFTA jurisdictional restrictions found nowhere in the language of the treaty.[31]

   **C.    The Lack of Required Disclosures by Prof. Jana and Mr. Bottini in the NAFTA Arbitration**

As explained, the Tribunal took near 28 months only to deny Claimants' claims on jurisdictional grounds.  The portion of the Award that contains the Tribunal's reasoning and analysis of the two issues explained above, consists of no more than 30 pages and does not to any authority.[32]  More importantly, the Tribunal's ruling that it lacked jurisdiction to hear the

---

[28]  Award ¶¶ 441-99.

[29]  Notice of Application, § 2(w); Terry Decl. ¶ 11.

[30]  Award ¶¶ 512-45.

[31]   Notice of Application, § 2(w); Terry Decl. ¶ 11.

[32]  *See* Award ¶¶ 441-545.

Claimants' claims does not comport with the express terms of the NAFTA as well as the predominant weight of international jurisprudence.[33]

These circumstances led Claimants to initiate the set-aside proceedings in Toronto, Ontario, Canada, where the NAFTA Arbitration was seated.[34]  In preparing for the application to set aside the Award, the Claimants and their counsel discovered for the first time that Prof. Jana, while deliberating in the NAFTA Arbitration, sought and successfully secured several mandates between 2022 and 2024 to represent Latin American governments in international investor-state arbitrations. [35]  These circumstances strongly call into question the impartiality and/or independence of Prof. Jana in issuing the Award in favor of México.[36]  While Prof. Jan was leading his firm to compete for and secure these mandates in investor-state arbitrations similar to the NAFTA Arbitration, Prof. Jana, along with his co-arbitrators, was actively deliberating over the issuance of the Award in the NAFTA Arbitration.[37]

Specifically, since founding his boutique law firm, Jana & Gil, in early 2022, Prof. Jana and his firm have pursued and taken on several engagements to defend the interests of sovereign states in investor-state arbitrations pending before ICSID that are akin to the NAFTA Arbitration, which was also administered by ICSID.  Based on publicly available information, Jana & Gil currently represents sovereign states in at least seven investor-state arbitrations pending before

---

[33]   Notice of Application, § 2(w).

[34]   Award ¶ 20.

[35]   Orta Decl. ¶ 17.

[36]   Orta Decl. ¶¶ 22-23.

[37]   *Id*.

ICSID, including the two Jana & Gil Cases, where Respondent is counsel of record for the investor-claimants.[38]

Importantly, during the course of the NAFTA Arbitration, which concluded with the issuance of the Award in August 2024, Prof. Jana did not disclose that he and his firm were competing for, or had accepted to take on, any of these engagements to the parties in the NAFTA Arbitration.[39]  Prof. Jana's failure to disclose these circumstances is highly problematic, as Prof. Jana and his firm pursued and accepted these engagements while Prof. Jana, as a member of the Tribunal in the NAFTA Arbitration, was actively deliberating over what would be in the Award.[40] Further, given the small size of Jana & Gil, which consists of only 20 lawyers, it is likely that Prof. Jana and his firm's work to represent sovereign states in investor-state arbitrations constitutes a substantial portion of Jana & Gil's business and revenue.[41]  There can be no legitimate question about the need for Prof. Jana to disclose these circumstances to the parties in the NAFTA Arbitration.  If those circumstances had been disclosed, they would have raised justifiable concerns about Prof. Jana's impartiality and/or his independence in the eyes of any objectively neutral observer.  But by failing to make the required disclosures, Prof. Jana precluded the Claimants from having the opportunity to seek his voluntary, or forced, recusal from the NAFTA Arbitration.[42]

The IBA Guidelines on Conflicts of Interest in International Arbitration (Orta Decl. Ex. 18, "IBA Guidelines"), adopted October 23, 2014, provide that the arbitrator might need to disclose

---

[38]   Orta Decl. ¶¶ 13-20 & Exs. 9, 10, 11, 12, 13, 14, 15.

[39]   Orta Decl. ¶¶ 22-23.

[40]   *Id.*

[41]   Orta Decl. Ex. 8.

[42]   Orta Decl. ¶ 7.

when he "concurrently acts as counsel in an unrelated case in which similar issues of law are raised." IBA Guidelines, pt. II, § 6.  The UNCITRAL Rules of Arbitration of 1976, which governed the NAFTA Arbitration, similarly provide that an arbitrator must disclose any circumstances which may give rise to justifiable doubts about the arbitrator's impartiality or independence.  Orta Decl. Ex. 19 ("UNCITRAL Rules") at Art. 9.  This duty is a continuing one with which the arbitrator must abide during the entirety of the arbitration.  *Id.*  Under the UNCITRAL Rules, a party may challenge an arbitrator if circumstances present justifiable doubts about his impartiality or independence.  *Id.* at Art. 10.

As explained, the Award essentially turned on two legal grounds: first, whether dual nationals could bring a claim against one of their states of nationality without being subject to dominant and effective nationality test, and, second, whether investors in their own rights could pursue claims for reflective losses.  Both issues are oft-litigated in investor-state arbitrations.[43]  As such, they are also likely to be in dispute in one or both of the Jana & Gil Cases.[44]  Even if they are not, legitimate concerns nonetheless exist as to Prof. Jana's independence and impartiality in the NAFTA Arbitration.  Prof. Jana would have been incentivized to take a sovereign state-friendly position on these issues of dual nationality and reflective loss in the Award—which he in fact did—as doing so could help his firm's then-pursuit of the mandates to represent sovereign states as well as its present or future representation of sovereign states in investor-state arbitrations that may involve issues similar to those that Prof. Jana decided against the Claimants in the NAFTA Arbitration.  These circumstances raise justifiable concerns about Prof. Jana's impartiality and/or

---

[43]  Orta Decl. ¶ 28.

[44]  *Id.*

independence in issuing the Award, and yet, he never disclosed his or his law firm's efforts to be retained by sovereign states or his and his firm's engagements as counsel in the Jana & Gil Cases.[45]

Moreover, in one of his undisclosed state-side engagements, *JLL Capital. S.A.P.l. de C.V. v. Republic of Honduras*, ICSID Case No. ARB/23/3, Prof. Jana and his firm appeared as counsel before Mr. Bottini, Honduras' party-appointed arbitrator in that case, who was also concurrently serving as co-arbitrator of Prof. Jana in the NAFTA Arbitration.[46]  Specifically, Prof. Bottini accepted his appointment by the Acting Secretary-General of ICSID as Honduras' party-appointed arbitrator on June 9, 2023.[47]  Mr. Bottini, as previously noted, was México's party-appointed arbitrator in the NAFTA Arbitration as well.  Prof. Jana and his firm also began acting for Honduras in the *JLL Capital* case in the fall or winter of 2023, on information and belief.[48]  Prof. Jana and his firm, as such, pursued and accepted a mandate for Honduras where it would be counsel before Mr. Bottini at the same time that Prof. Jana was deliberating with Mr. Bottini in the NAFTA Arbitration for the issuance of the Award.[49]

The IBA Guidelines explain that an arbitrator's relationship with his co-arbitrator may, in the eyes of the parties, give rise to doubts as to the arbitrator's impartiality or independence.  To that end, the IBA Guidelines explicitly list the situation of where "[t]he arbitrator was, within the past three years, a partner of, *or otherwise affiliated with*, another arbitrator" as an example of circumstances requiring the arbitrator's disclosure.  IBA Guidelines, pt. II, Orange List, ¶ 3.3.3.

---

[45]  Orta Decl. ¶¶ 22-23.

[46]   Orta Decl. ¶ 16 & Ex. 11.

[47]  Orta Decl. Ex. 11.

[48]  Orta Decl. ¶ 16.

[49]  *Id*.

However, at no point did Mr. Bottini or Prof. Jana disclose their affiliation in the *JLL Capital* case, which was only discovered by Petitioner after the Award was issued.[50]  If timely disclosed and even without knowing the other work that Prof. Jana and his firm were doing for the Sovereigns in investor-state arbitrations, the connection between Mr. Bottini and Prof. Jana – which they maintained precisely while they were actively deliberating for the issuance of the Award in the NAFTA Arbitration – would have prompted Claimants in the NAFTA Arbitration to request that Prof. Jana either not pursue the engagement as counsel in the *JLL Capital* case, or that he recuse himself as arbitrator in the NAFTA Arbitration.[51]  And yet, Prof. Jana and Mr. Bottini made no disclosure about these circumstances even though they were concurrently drafting the Award in the NAFTA Arbitration in favor of México.[52]

### D.    The Foreign Proceedings

On September 17, 2024, Petitioner, along with the other 26 Claimants, has initiated civil proceedings before the Ontario Court to set aside the Award pursuant to Ontario's International Commercial Arbitration Act (Terry Decl. Ex. 2, "ICAA"), 2017, S.O. 2017, c. 2, Sched. 5, which implements the UNCITRAL Model Law on International Commercial Arbitration (the "Model Law").[53]

In the set-aside proceedings, Petitioner alleges that the Ontario Court should set aside the Award pursuant to Section 11 of the ICAA, because the Tribunal incorrectly determined that it did

---

[50]  Orta Decl. ¶ 16.

[51]  *Id*.

[52]  *Id*.

[53]  Notice of Application, § 2(j).

not have jurisdiction to hear the Claimants' claims.[54]  In making its erroneous jurisdictional rulings, the Tribunal also exceeded its jurisdiction by importing extra-textual jurisdictional requirements and limitations into the NAFTA – that is, "a restriction on 'reflective losses' and a dominant and effective nationality requirement and restriction on dual nationality."[55]  Hence, Petitioner alleges that the Award is subject to vacatur in accordance with Article 34(2)(a)(iii) of the Model Law as well.[56]

In the set-aside proceedings, Petitioner has further alleged that the Award should be set aside due to the apparent bias of the party-appointed arbitrators, in particular, that of Prof. Jana. As with the UNCITRAL Rules, the Model Law also imposes a continuing duty on arbitrators throughout the arbitral proceedings to disclose to the parties without delay "any circumstances likely to give rise to justifiable doubts as to [their] impartiality or independence." Model Law, Art. 12 (1).  However, Prof. Jana and Mr. Bottini "did not disclose that Jana & Gil […] is counsel in an arbitration before Mr. Bottini, nor has Prof. Jana disclosed his firm's state-side appointments, which began in or around 2022 and increased significantly thereafter."[57]  This lack of disclosure improperly denied the Claimants of an opportunity to seek Prof. Jana's and/or Mr. Bottini's voluntary or forced recusal from the NAFTA Arbitration.  As a result, Petitioner alleges that the Ontario Court should set aside the Award pursuant to Article 34 (2)(a)(iv) of the Model Law,

---

[54]  Notice of Application, § 2(w); Terry Decl. ¶ 11.

[55]  Notice of Application, § 2(y)(i); Terry Decl. ¶ 12.

[56]  Notice of Application, § 2(y); Terry Decl. ¶ 12.

[57]  Notice of Application, § 2(y)(ii).

because "the composition of the arbitral tribunal or the arbitral procedure was not in accordance with the agreement of the parties."[58]

### E.    Respondent Possesses Highly Material Information For Use In Foreign Proceedings

Given their involvement as counsel of record to the investor-claimants in the Jana & Gil Cases, Respondent is in possession, custody, and control of information that Petitioner requests in this Section 1782 Application from it, *i.e.*, information about the details of Prof. Jana and his firm's involvement and work on behalf of the Sovereigns in the Jana & Gil Cases (the "<u>Arbitration Information</u>"), which is highly material to the Foreign Proceedings.  This Arbitration Information, *inter alia*, relates to the exact timing of Jana & Gil's appearance in these arbitrations; the specific role that Prof. Jana played therein; the issues that Prof. Jana and his firm have been litigating and/or will likely be litigating on behalf of the Sovereigns; and their similarity to the issues addressed, and ruled in favor of México, by the Tribunal in the NAFTA Arbitration.  These facts and issues are all critical and indispensable for Petitioner to effectively prosecute and prove his claims in the Foreign Proceedings that Prof. Jana improperly failed to disclose his engagements as counsel for the Sovereigns in the Jana & Gil Cases, as well as his similar role in other international arbitrations, which, if disclosed, would have raised justifiable doubts about Prof. Jana's impartiality and independence in issuing the Award.[59]  Prof. Jana's failure to disclose these matters, alone, raise justifiable doubts about Prof. Jana's impartiality and independence in issuing the Award.[60]

---

[58]    Terry Decl. ¶¶ 15-18; Notice of Application, § 2(y)(ii).

[59]    Orta Decl. ¶ 32; Terry Decl. ¶¶ 21, 26-29.

[60]    Orta Decl. ¶ 22.

## II.    ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceeding. *Intel*, 542 U.S. at 259. The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782.

An application made pursuant to Section 1782 must satisfy three statutory requirements: (1) the person from whom discovery is sought must reside in or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person. *See In re DiGiulian*, 314 F. Supp. 3d 1, 6 (D.D.C. 2018); *In re Pishevar*, No. 21-MC-105, 2023 WL 2072454, at *2 (D.D.C. Feb. 17, 2023) (citing *DiGiulian,* 314 F. Supp. 3d at 6).

If the statutory requirements are met, courts may then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4)

whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264-65.

The Court should consider these discretionary factors in light of the "statute's twin aims: i.e., to provide fair and efficient assistance to participants in international litigation and to encourage other countries to provide similar assistance." *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) (also noting the "statute's overarching interest in providing fair and efficient assistance and the liberal standards of discovery in granting the application") (quoting *In re Application of Euromepa S.A.,* 51 F.3d 1095, 1097 (2d Cir.1995)); *Intel*, 542 U.S. at 252. The Supreme Court and the D.C. Circuit have acknowledged a congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g.*, *Intel*, 542 U.S. at 247–48; *Al Fayed v. C.I.A.*, 229 F.3d 272, 276 (D.C. Cir. 2000) (acknowledging that "successive amendments, since the statute's origin in 1855, have given [Section 1782] 'increasingly broad applicability.'" (citing *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996))); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given 'increasingly broad applicability.'" (quoting *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993))).

### B.    Petitioner Satisfies The Statutory Requirements of 28 U.S.C. § 1782.

Petitioner satisfies the three statutory requirements of Section 1782: (1) Respondent "resides" and is "found" in the District of Columbia; (2) the requested documentary evidence is for use in foreign proceedings; and (3) Petitioner is an "interested person."

### 1.    Respondent Is "Found" in The District of Columbia.

Respondent is found in this district because White & Case has an office and practices law in this district.[61]  *See, e.g.*, *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (holding that "daily practice of law in this jurisdiction gives it the requisite 'systematic and continuous' presence to be 'found' here for purposes of section 1782").

### 2.    The Discovery Sought Is for Use in Foreign Proceedings.

The information sought in the Subpoena is "for use" in foreign proceedings.  At the outset, the Canadian proceedings qualify as proceedings in a "foreign or international tribunal" for purposes of Section 1782.  Indeed, numerous courts have specifically found that civil proceedings before the Ontario Court satisfy Section 1782's requirements.  *See, e.g.*, *In re Adams*, No. 21-MC-80011-VKD, 2021 WL 275478, at *4 (N.D. Cal. Jan. 27, 2021) (finding the Ontario Superior Court of Justice to be a "foreign tribunal" for purposes of Section 1782); *In re Shefsky*, 2023 WL 9065152, at *2 (D.Nev. Nov. 1, 2023) (same); *In re West Face Capital Inc.*, No. 19-MC-80260-LB, 2019 WL 5617891, at *2 (N.D.Cal. Oct. 31, 2019) (same).  *See also DiGiulian,* 314 F. Supp. 3d at 6 (finding the Quebec Superior Court to be a "foreign tribunal" for purposes of Section 1782).

Likewise, Petitioner's requested discovery is "for use" in the Foreign Proceedings. Petitioner is not required to show that the information sought would be discoverable or admissible in the Foreign Proceedings.  *Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 11 (D.D.C.

---

[61]  Orta Decl. Ex. 3.

2017) ("[S]ection 1782 does not require that the material sought in the United States be discoverable—or even admissible—in the foreign tribunals."); *see also see In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech*, 748 F. Supp. 2d 522, 527 (E.D. Va. 2010) ("To delve into the merits of litigation pending before a foreign tribunal would be a breach of international comity.  Indeed, the Supreme Court has instructed that the district courts are to refrain from delving into the similarly technical question of discoverability under foreign laws in considering a § 1782 request for judicial assistance.").  Rather, the burden on Petitioners is "*de minimis*"; Petitioners need only show that the evidence is relevant to the Foreign Proceedings. *Veiga*, 746 F. Supp. at 18 (granting application where petitioners made "*prima facie* showing and its conclusion that the discovery sought in fact relates to claims and defenses").

Here, Petitioner amply satisfies this requirement.  The information sought in the Subpoena is highly material and relevant to the Foreign Proceedings, as it directly concerns, among others, (i) Prof. Jana's involvement, appearance, and role in the Jana & Gil Cases and (ii) the issues that are in dispute between the parties in those cases and their possible similarity to the issues decided by Prof. Jana in the Award.[62]  Petitioner will have the opportunity to present evidence in support of his set-aside application in the Foreign Proceedings, and he will use any information he gleans from this Application, to support and prove his claims in the Foreign Proceedings that Prof. Jana improperly failed to disclose his and his firm's mandates to represent sovereign states in similar investor-state arbitrations, including the Jana & Gil Cases, to the parties in the NAFTA Arbitration and that these matters, as well as his failure to disclose them during the NAFTA Arbitration, raise

---

[62]  Orta Decl. ¶ 32; Terry Decl. ¶¶ 21, 26-29.

justifiable doubts about Prof. Jana's impartiality and independence in acting as an arbitrator in the NAFTA Arbitration.[63]

### 3. Petitioner Is an "Interested Person".

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings. There is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel.*, 542 U.S. at 256. As the party who "commenced [the Foreign Proceedings] for which discovery sought, Petitioner clearly is an "interested person" under Section 1782. *In re Kuwait Port Authority*, No. 22-00064-RJL-RMM, 2024 WL 4183210, at *5 (Aug. 6, 2024); *see also DiGiulian,* 314 F. Supp. 3d at 6.

### C. All of the Discretionary Factors of Section 1782 Weigh in Favor of Permitting the Discovery Petitioner Seeks.

Each of the *Intel* factors weighs in favor of granting the requested discovery here. *First*, Respondent is not a party to the Foreign Proceedings. *Second*, there is no reason to believe that the Ontario Court would be unreceptive to evidence obtained through Section 1782 discovery. *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence. *Fourth*, Petitioner's focused document requests are carefully circumscribed and targeted to obtain specific and targeted information so as to avoid an undue burden on Respondent.

---

[63]  Terry Decl. ¶¶ 21, 29; Orta Decl. ¶¶ 22, 32.

### 1.    The First *Intel* Factor Favors Granting Discovery.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, White & Case is not a party to the Foreign Proceedings.[64] Nor does it have an office in Canada.[65] *See also DiGiulian,* 314 F. Supp. 3d at 7 (weighing first *Intel* factor in Petitioners' favor because the discovery target is not a "participant in the Canadian proceedings" nor "a citizen nor a resident of Canada").

### 2.    The Second *Intel* Factor Favors Granting Discovery.

Under the second *Intel* factor, this Court "evaluates whether the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the court to U.S. judicial assistance weigh in favor of granting Petitioners' request." *DiGiulian,* 314 F. Supp. 3d at 7 (citing *Intel*, 524 U.S. at 264); *see also Kuwait Port Authority*, 2024 WL 4183210, at *6.

Here, "[t]he nature of the [Canadian] court system or the proceedings ongoing there do not raise concerns in this U.S. court." *Kuwait Port Authority*, 2024 WL 4183210, at *6. The Ontario Court is "the proper forum" in which to challenge the validity of the Award because the NAFTA Arbitration was seated in Toronto, Canada. *DiGiulian,* 314 F. Supp. 3d at 7 (weighing second *Intel* factor in Petitioners' favor because the Canadian court was "the proper forum"). As the proceedings to set aside the Award would involve "the submission and exchange of factual

---

[64]  Terry Decl. 30.

[65]  Terry Decl. Ex. 3.

evidence" regarding the arbitrators' undisclosed mandates, "the nature of the proceedings" also favors granting Petitioner's application. *DiGiulian,* 314 F. Supp. 3d at 7.[66]

Moreover, the Ontario Court will likely be receptive to evidence obtained through this Application.[67] Federal courts have similarly observed that "there is no indication that the Ontario Superior Court of Justice would be unreceptive to" Section 1782 evidence. *In re Shefsky*, 2023 WL 9065152, at *2 (authorizing Section 1782 discovery for contemplated civil proceedings in the Ontario Superior Court of Justice); *In re West Face Capital Inc.*, 2019 WL 5617891, at *2 (observing that the Ontario Superior Court of Justice "appears receptive to U.S. federal-court judicial assistance").

In any event, a court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *In re DiGiulian*, 314 F. Supp. 3d at 8 (noting that "it is not necessary to conduct an 'extensive examination of foreign law regarding the existence and extent of discover[y] in the forum country'" (quoting *In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 105-06 (D.D.C. 2010))); *Barnwell*, 265 F.Supp.3d at 11 (finding that receptiveness of foreign tribunal weighed in favor of Petitioner's request given the absence of any "clear and unequivocal indication that the foreign tribunal would not be receptive to the evidence sought" (quoting *Veiga*, 746 F.Supp.2d at 24)). "[A] respondent must demonstrate a 'clear directive' or 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782,' such as "'judicial, executive or legislative declarations that specifically address the use of evidence

---

[66] Terry Decl. ¶ 19.

[67] Terry Decl. ¶¶ 32-33 & Exs. 6, 7, 8.

gathered under foreign procedures.'" *In re Chevron Corp.*, No. 7:10-mc-00067, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010) (second alteration in original) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).

Here, there is no "authoritative proof" that Ontario Court would be unreceptive to the judicial assistance requested in this Application. Indeed, Canadian courts have repeatedly recognized that a party in civil proceedings – like Petitioner here – can directly apply under Section 1782 to obtain evidence from a non-party in the United States.[68] Accordingly, the Second *Intel* factor strongly weighs in favor of permitting the discovery requested in this Application.

### 3.    The Third *Intel* Factor Favors Granting Discovery.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself. 542 U.S. at 260-61 (observing "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there . . . [n]or does § 1782(a)'s legislative history suggest that Congress intended to impose a blanket foreign-discoverability rule on the provision of assistance under § 1782(a)"). Not only is there no discoverability requirement, but discovery sought pursuant to § 1782 is not subject to an admissibility requirement either. *See, e.g.*, *Veiga*, 746 F. Supp. 2d at 17–18 ("[D]istrict courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding."). There also is no requirement that a Section 1782 applicant

---

[68]    Terry Decl. ¶¶ 32-33 & Exs. 6, 7, 8.

must first attempt to obtain the discovery in the foreign country. *See In re DiGiulian*, 314 F. Supp. 3d at 8–9 ("[L]itigants are not required to seek discovery through the foreign tribunal prior to requesting through the United States." (citation omitted)); *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement,' finds no support in the plain language of [Section 1782] and runs counter to its express purposes."). The issue is solely whether the discovery is being sought in bad faith. *See In re Chevron Corp.*, 2010 WL 4883111, at *3.

Here, there is no reason to believe that any of the discovery sought violates Canadian public policy.[69] Petitioner is expressly not seeking any privileged information. *See* Subpoena, Instruction § 1. Rather, he merely seeks limited records of the pending ICSID arbitrations that are sufficient to ascertain Prof. Jana's role and involvement in the Jana & Gil's Cases, as well as the issues that are in dispute between the parties therein. Canada does not have any law or public policy against such discovery, and even records of confidential arbitration proceedings have been ordered for production by Canadian courts as there is no principle of "arbitration privilege" in Canadian law.[70]

Moreover, if Respondent reasonably believes that any individual documents present any legitimate concerns, Petitioner is willing to accommodate such concerns, for instance by stipulating to an appropriate protective order. *See, e.g.*, *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, Civ. No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits [a] Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.");

---

[69]  Terry Decl. ¶ 34.

[70]  Terry Decl. ¶ 34 & Exs. 10, 11, 12.

*Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005) (granting modification of protective order allowing Section 1782 applicant to use discovery in related proceedings).

### 4.    The Fourth *Intel* Factor Favors Granting Discovery.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  *In re Veiga*, 746 F. Supp. 2d at 19 ("[T]he standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)."); *Kuwait Port Authority*, 2024 4183210, at * 6 (collecting cases).  This inquiry encompasses "the relevance of the requested discovery to the foreign proceeding."  *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2017 WL 3708028, at *4 (citing *In re Veiga*, 746 F. Supp. 2d at 19).  Relevancy in this context "is broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case."  *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000).  "When relevance is in doubt, the district court should be permissive."  *In re Veiga*, 746 F. Supp. 2d at 19.

Here, the *two document requests* are narrowly tailored, temporally limited, and directly relevant to the issues in the Foreign Proceedings.  Specifically, the discovery sought by Petitioner is relevant and highly material to proving his bias and/or lack of independence when acting in the NAFTA Arbitration, including his involvement working for sovereign states in the Jana & Gil Cases, the issues involved in those proceedings and their possible similarity to the issues in the NAFTA Arbitration, and the impropriety of Prof. Jana's failure to disclose his mandates related to

the Jana & Gil Cases.[71]  Further, as explained, Petitioner does not seek any privileged information. Petitioner's Application seeks only limited records of the arbitration proceedings at issue – whose records are not available to Petitioner from other sources[72] – to provide facts and evidence that Petitioner will need to set-aside the Award in the Foreign Proceedings.  Whatever burden Respondent may incur by producing the requested discovery, it is both modest and proportionate given the circumstances.

## III.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Orta Declaration as Exhibit 1, (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoena on Respondent; and (d) grant any and all other relief to Petitioner as deemed just and proper.

---

[71]  Orta Decl. ¶ 32; Terry Decl. ¶¶ 25, 29.

[72]  Orta Decl. ¶ 33; Terry Decl. ¶ 27.

Dated:  November 14, 2024

Respectfully submitted,

_____

David M. Orta (D.C. Bar No. 462083)
Juan P. Morillo (D.C. Bar No. 475196)
Woo Yong Chung (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
davidorta@quinnemanuel.com
juanmorillo@quinnemanuel.com
wooyongchung@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000

*Attorneys for Petitioner Frederick J. Warren*